UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NISAN MEAD,

    Plaintiff,                                             Hon. Janet T. Neff

v.                                                                 Case No. 1:12-CV-1318

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 25 years of age on his alleged disability onset date. (Tr. 142). He possesses an eleventh grade education and worked previously as a press operator, stocker, and small engine mechanic. (Tr. 29, 43).

Plaintiff applied for benefits on April 22, 2010, alleging that he had been disabled since July 25, 2002, due to back pain, knee pain, sleep apnea, and deafness in his right ear. (Tr. 142-50, 179). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 64-141). On July 27, 2011, Plaintiff appeared before ALJ Thomas English with testimony being offered by Plaintiff and vocational expert, Sharon Princer. (Tr. 37-63). In a written decision dated August 26, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 23-31). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2005. (Tr. 25); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's lumbosacral spine, taken December 4, 2003, revealed the following:

> The vertebrae are intact and are in normal alignment. Disc spaces are well maintained. No spondylolysis or spondylolisthesis. No acute or active bony lesions are seen.

(Tr. 257).

On June 28, 2005, Plaintiff was examined by Dr. Kenneth Merriman. (Tr. 236). The doctor reported that a recent MRI examination of Plaintiff's left knee "shows a tear of the ACL, as well as a tear of both of his menisci." (Tr. 236). An examination of Plaintiff's left knee revealed laxity and joint line tenderness. (Tr. 236). The doctor recommended to Plaintiff that he undergo surgical repair of his knee. (Tr. 236).

On March 15, 2006, Plaintiff underwent ACL reconstruction surgery of the left knee performed by Dr. James Horton. (Tr. 239). X-rays of Plaintiff's left knee, taken March 24, 2006, revealed "satisfactory alignment of his ACL reconstruction." (Tr. 240). Dr. Horton further observed that "neurovascularly he is intact." (Tr. 240). The doctor recommended that Plaintiff begin participating in physical therapy and "begin weightbearing as tolerated." (Tr. 240).

X-rays of Plaintiff's chest, taken March 15, 2006, revealed "no acute pulmonary disease." (Tr. 256).

On April 21, 2006, Plaintiff was examined by Dr. Horton. (Tr. 241). The doctor reported that Plaintiff "has about 110 degrees of knee flexion" and "negative anterior drawer."[1] (Tr. 241). X-rays of Plaintiff's left knee revealed "satisfactory alignment." (Tr. 241). The doctor instructed Plaintiff to continue physical therapy and "strengthening range of motion exercises." (Tr. 241).

---

[1] The anterior drawer test is a method by which to assess "one-plane anterior instability" of the knee. *See* Anterior Drawer Test, available at http://www.pthaven.com/page/show/102189-anterior-drawer-test-two-angles- (last visited on January 8, 2014).

4

On June 14, 2006, Plaintiff was examined by Dr. Horton. (Tr. 242). Plaintiff reported that "he is able to do his activities and he is able to work but he still has a lot of pain" including "a lot of pain in his back." (Tr. 242). An examination of Plaintiff's left knee revealed the following:

> Physical examination of the left knee, no joint line tenderness appreciated. He has no ligamentous laxity. Anterior drawer was equal to his right. He has full range of motion. He has good strength on flexion/extension. He is neurovascularly intact. Negative straight-leg raise. He is tender on his lower back to palpation.

(Tr. 242). X-rays of Plaintiff's left knee revealed "satisfactory alignment of his ACL reconstruction." (Tr. 242). Plaintiff requested "a refill of his narcotic medications" which the doctor declined emphasizing instead "the importance of physical therapy which [Plaintiff] states he will resume." (Tr. 242).

On June 26, 2006, Plaintiff participated in a CT examination of his lumbar spine the results of which were "negative." (Tr. 254).

Following an August 9, 2006 examination of Plaintiff, Dr. Horton reported that Plaintiff "has excellent range of motion of his knee" and "excellent drawer compared to his noninjured right" knee. (Tr. 245).

On September 7, 2006, Plaintiff was examined by Dr. Eric Leep. (Tr. 248). Plaintiff reported that he was experiencing low back pain and "that he needs pain medications." (Tr. 248). An examination revealed the following:

> Gait stable and station mid position and normal. Inspection and palpation of bones, joints, and muscles is unremarkable. Bilateral foot dorsiflexors, bilateral foot plantarflexors, bilateral hip flexors, bilateral quadriceps, bilateral hip adductors and bilateral hips abductors muscle strength is 5/5. Muscle tone is normal. Lumbar

5

> [range of motion] shows decreased flexion, decreased extension, decreased LLF, decreased RLF, decreased LR, decreased RR. He has tenderness in the lumbar spine to palpation.

(Tr. 248). The doctor declined to prescribe narcotic medication to Plaintiff and instead instructed him to participate in physical therapy. (Tr. 248).

On May 7, 2007, Plaintiff underwent surgery to his left knee to repair a lateral meniscal tear. (Tr. 262-63).

On January 29, 2008, Plaintiff participated in a sleep study the results of which revealed "severe obstructive sleep apnea." (Tr. 287).

On April 14, 2008, Plaintiff was examined by Physician's Assistant Jill Schmidt. (Tr. 351-53). Plaintiff reported that he was experiencing lower back pain. (Tr. 351). A musculoskeletal examination revealed the following:

> Right lower paraspinal muscle tenderness, tenderness present over the sacroiliac joint. No instability. Normal strength and tone. Full range of motion.

(Tr. 352).

On July 3, 2008, Plaintiff participated in a consultive examination conducted by Dr. Holly Fanjoy. (Tr. 357-60). Plaintiff reported that "he cannot bend, twist or squat secondary to pain, which he is experiencing on a daily basis." (Tr. 357). Plaintiff further reported that he "can stand for about 2-3 minutes at a time[,] can walk for only about 50 feet" and "can occasionally lift 20 pounds." (Tr. 357). A musculoskeletal examination revealed the following:

> There are no obvious bony deformities. Peripheral pulses are easily palpated and symmetrical. There is no edema. There is no evidence of varicose veins. There is no tenderness, erythema, or effusion of any joint. The patient has no difficulty maneuvering on and off the examination table. He does have moderate difficulty with lying

6

> supine on the table. He has mild difficulty with squatting. Straight leg raising is negative on the right and positive for pain radiating into the thigh on the left side. There is paravertebral muscle spasm in the lower thoracic and upper lumbar spine bilaterally. The hands exhibit full grip strength and full fist formation bilaterally. Evaluation of the bilateral knees does not reveal any obvious swelling or effusion. There are some well-healed surgical scars over the left knee. There is no evidence of ligamentous instability.

(Tr. 359). A neurological examination revealed the following:

> No disorientation is noted. Strength is intact in all four extremities except slightly diminished in the left lower extremity particularly with left foot dorsiflexion and plantarflexion, which is 4+/5. There is also 4+/5 strength with left knee extension and flexion. There is no muscle atrophy. Sensation is intact throughout to light touch as well as to pinprick in hands and feet. Reflexes are 2+ bilaterally in the brachial radialis and patellar tendons.

(Tr. 359). The doctor concluded that Plaintiff was experiencing musculoskeletal back and knee pain.

(Tr. 359). Specifically, the doctor reported the following:

> He did have some pain with range of motion at the left knee, but otherwise was able to perform all orthopedic maneuvers. Joint exam was unremarkable. Evaluation of the back did reveal significant decreased stability to flex at the lumbar spine secondary to pain. He was also noted to have diminished strength in the left leg as described above. Otherwise, strength, sensation and reflexes were intact. The patient does exhibit a mild left-sided limp, but does not use an assistive device for ambulation.

(Tr. 359). With respect to Plaintiff's obstructive sleep apnea, the doctor reported that Plaintiff "is currently managed on CPAP." (Tr. 360). The doctor further noted that Plaintiff's "cardiopulmonary exam is unremarkable" and "he does not have any signs of congestive heart failure on exam and no lower extremity edema." (Tr. 360). The doctor also noted that Plaintiff "has had a 10-year history of idiopathic right ear deafness," but "was able to hear normal voice at 4 feet." (Tr. 360).

7

On January 28, 2009, Plaintiff reported to his doctor that his application for disability benefits had been denied. (Tr. 385). Plaintiff indicated that he was going to re-apply for benefits, but complained that she was "filling out [his] work ability papers wrong." (Tr. 385).

On August 21, 2010, Plaintiff participated in a consultive examination conducted by Dr. Samer Elfallal. (Tr. 376-79). A musculoskeletal examination revealed the following:

> The patient did not have any gross osseous abnormalities. There is no edema or varicose veins on examination. He did have some mild effusions that were noted in his knees. No ligamentous laxity was appreciated of the knees. Range of motion testing reveals only limitations in the lumbar spine. The patient would not heel and toe walk secondary to pain inhibition. He was able to get on and off the table without assistance. Negative straight leg raise test. No paravertebral muscle spasms were palpable.

(Tr. 378). A neurological examination revealed the following:

> Cranial nerves II-XII are grossly intact. Strength is 5/5. Reflexes 1+/4. Negative straight leg raise test. No sensory deficits on examination. Examination of the ear did not reveal any infections. Tympanic membranes were clear bilaterally. There was no atrophy or fasciculation. There is no dysmetria or dysdiadochokinesia. The patient did have tenderness on palpation of his right knee.

(Tr. 378).

On July 25, 2011, Dr. Diane Ebaugh completed a report regarding Plaintiff's physical limitations. (Tr. 444-51). The doctor reported that she treats Plaintiff every three months for chronic low back pain which Plaintiff rated as 5-6 on a scale of 1 to 10. (Tr. 444-46). With respect to Plaintiff's functional limitations, Dr. Ebaugh reported that during an 8-hour workday, Plaintiff can sit for one hour and stand/walk for one hour, but required a sit/stand option. (Tr. 446-47). The doctor reported that Plaintiff can occasionally lift/carry 5 pounds, but can never lift/carry more than 5 pounds. (Tr. 447). The doctor reported that Plaintiff experienced "moderate" limitations in his

ability to use his upper extremities to perform work activities. (Tr. 447-48). The doctor also reported that Plaintiff's "experience of pain, fatigue or other symptoms" is "frequently" severe enough to interfere with his attention and concentration. (Tr. 449). The doctor also noted, however, that Plaintiff could tolerate "moderate" work stress. (Tr. 449).

Plaintiff testified at the administrative hearing that he is disabled "due to the pain in my mid to lower back emanating down through my leg to about the middle of my calf." (Tr. 43). Plaintiff further reported that he experiences "trouble sitting for long periods of time, standing, walking." (Tr. 43). Plaintiff testified that his pain is "pretty much constant." (Tr. 46). Plaintiff reported that "just about every day" his pain rates "maybe 6" on a scale of 1 to 10 and that "at its worst" his pain "runs between probably about a 6 to an 8" on a scale of 1 to 10. (Tr. 45-46). Plaintiff testified that "at its best," his pain rates as 3 or 4 on a scale of 1 to 10. (Tr. 44-45). Plaintiff also testified, however, that he visits his doctor only "every three months or so." (Tr. 44). Plaintiff testified that he can walk "maybe a half block" and stand for "20 minutes to a half hour probably." (Tr. 47). Plaintiff testified that he can sit for 30 to 60 minutes and can lift no more than "about a gallon of milk." (Tr. 47-48). Plaintiff also testified that he "occasionally" plays with his kids and as recently as the previous day went fishing. (Tr. 50).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

9

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from (1) degenerative disc disease of the lumbar spine with radicular features; (2) degenerative joint disease of the left knee; (3) hearing loss affecting the right ear; and (4) obesity, severe impairments that whether considered alone or in

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 25-27).

The ALJ next determined that Plaintiff retained the capacity to perform light work[3] subject to the following limitations: (1) he can lift or carry 20 pounds occasionally and 10 pounds frequently; (2) he requires a sit/stand option that permits him to change position every 30 minutes; (3) he cannot climb ladders, ropes, or scaffolds; (4) he cannot operate foot controls; (5) he can only occasionally crouch, crawl, bend, or twist; and (6) he has a decreased ability to hear in the right ear. (Tr. 27).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a

---

[3] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

11

significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sharon Princer.

The vocational expert testified that there existed approximately 9,600 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 57-60). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.         The ALJ Properly Evaluated the Medical Evidence**

As noted above, Dr. Ebaugh completed a report regarding Plaintiff's physical limitations. The doctor reported that during an 8-hour workday, Plaintiff can sit for one hour and stand/walk for one hour, but required a sit/stand option. The doctor reported that Plaintiff can occasionally lift/carry 5 pounds, but can never lift/carry more than 5 pounds. The doctor reported that Plaintiff experienced "moderate" limitations in his ability to use his upper extremities to perform work activities. The doctor also reported that Plaintiff's "experience of pain, fatigue or other symptoms" is "frequently" severe enough to interfere with his attention and concentration. The ALJ accorded "only limited weight" to Dr. Ebaugh's opinion. Plaintiff argues that because Dr. Ebaugh was his treating physician, the ALJ was required to afford controlling weight to her opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical

condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with

other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

As the ALJ recognized, as the evidence detailed above makes clear, Dr. Ebaugh's opinion is inconsistent with the evidence of record. As the ALJ further noted, Dr. Ebaugh's opinion is inconsistent with his own contemporaneous treatment notes. Specifically, the doctor's treatment notes do not contain findings or observations consistent with her subsequent opinion that Plaintiff suffers from such extreme limitations. As the ALJ concluded, Dr. Ebaugh's opinion is based in large measure on Plaintiff's subjective allegations which, likewise, are not supported by the record.

In a related argument, Plaintiff asserts that the ALJ "failed to cite to specific medical or non-medical evidence that supports his RFC." The ALJ discussed at great length the evidence of record and how such supported his RFC determination. (Tr. 26-29). This argument is, therefore, rejected. In sum, the ALJ's conclusion to afford less than controlling weight to Dr. Ebaugh's opinion is supported by substantial evidence.

14

## II. The ALJ Properly Discounted Plaintiff's Subjective Allegations

As discussed above, Plaintiff testified at the administrative hearing that he was disabled due to pain and the physical limitations from which he suffers. The ALJ concluded that he "finds issues" with Plaintiff's credibility and, therefore, discounted Plaintiff's subjective allegations. (Tr. 29). Plaintiff asserts that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, - - - Fed. Appx. - - -, 2013 WL 5496007 at *3 (6th Cir., Oct. 4, 2013) (citation omitted).

First, Plaintiff takes issue with the ALJ's observation that Plaintiff "was not credible in describing his felony conviction for larceny in 2006, in which he pled guilty, but claimed he was innocent, alleging that he was in the 'wrong place at the wrong time.'" (Tr. 29). Plaintiff argues that the ALJ equated the fact of Plaintiff's conviction "with a conclusion that he is exaggerating his

16

physical impairments." The ALJ did not discount Plaintiff's credibility *because of* his larceny conviction, but instead because Plaintiff, in the ALJ's estimation, was less than candid in describing such. A review of the exchange in question reveals that the ALJ's conclusion was not unreasonable. (Tr. 41-42). Moreover, it was not inappropriate to consider this matter when assessing Plaintiff's credibility. *See, e.g., Karout v. Astrue*, 2013 WL 1946222 at *5 (D. Or., May 6, 2013) ("the ALJ's credibility finding was substantially justified when it was based, among other factors, on claimant's prior criminal convictions"); *Yousif v. Astrue*, 2013 WL 764859 at *9 (M.D. Fla., Jan. 28, 2013) (no error where ALJ "discredited the Plaintiff's complaints due to [his] criminal convictions"). This argument is, therefore, rejected. In sum, while there is no dispute that Plaintiff suffers from a certain level of functional limitation, as the ALJ recognized, neither the objective medical evidence nor Plaintiff's reported activities support Plaintiff's subjective allegations. The Court concludes, therefore, that the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

**III.        The ALJ Properly Considered Plaintiff's Obesity**

Finally, Plaintiff argues that the ALJ failed to consider "the impact of [his] obesity on his residual functional capacity or the impact it had on his other impairments." Plaintiff argues that the ALJ failed to comply with the requirements of Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 (S.S.R., Sept. 12, 2002).

As the Sixth Circuit has made clear, Social Security Ruling 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v.*

17

*Commissioner of Social Security*, 359 Fed. Appx. 574, 577 (6th Cir., Dec. 22, 2009) (citation omitted); *see also*, *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir., Jan. 31, 2006) ("[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants"). The ALJ recognized that Plaintiff suffers from obesity and specifically found that such constituted a severe impairment. The ALJ analyzed the entire record in assessing Plaintiff's residual functional capacity. The ALJ's RFC determination sufficiently accounts for Plaintiff's obesity and the limitations imposed by such. This argument is, therefore, rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: January 27, 2014

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge